UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:04 CR 529** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL F. ALEXANDER,** | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Michael F. Alexander's Supplement to Motion to Reconsider Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). **Doc ##: 67, 72**. For the following reasons, the Court **GRANTS** the Motion and reduces Alexander's sentence to time served..

**I.      Background**

In August 2005, Michael Alexander pled guilty to distribution of and possession with the intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine. Because Alexander had a prior felony drug offense, the statutory mandatory minimum increased from five to ten years.  Alexander was also classified as a career offender based on his prior convictions for possession with the intent to distribute cocaine and attempted possession with the intent to distribute cocaine.  His career-offender guidelines range was 262 to 327 months. Alexander, through counsel, moved for a downward departure or variance arguing that a sentence within the career offender range "would be onerous, unreasonable and greater than necessary." Doc #: 25 at 7.  At sentencing, the Court imposed a sentence of 262 months – the low end of the guidelines range.

Alexander is incarcerated at FCI Allenwood Low in Pennsylvania. He has been in custody since he was ordered detained on October 1, 2004. He has a current release date of December 18, 2023.

On April 27, 2020, Alexander filed a pro se motion for compassionate release due to his asthma and his risk of increased illness from COVID-19. Doc #: 62. The Government opposed and the Court denied his motion, finding Alexander had not provided records to establish he suffered from "moderate to severe asthma." Respectively, Doc ##: 64, 65. Alexander filed a motion for reconsideration and a supplement to his request for reconsideration. Respectively, Doc ##. 67, 68. The Court then appointed the Office of the Federal Public Defender to represent Alexander and supplement the pending Motion. 7/27/2020 Non-Doc Order. Represented by counsel, Alexander filed the pending Motion, Doc #: 72, the Government filed a response, Doc #: 73, and Alexander filed a reply, Doc #: 75.

## II. Law and Analysis

Before granting a sentence modification under § 3852(c)(1)(A)(i), a court must find: (1) extraordinary and compelling reasons warrant a sentence modification, (2) the defendant is not a danger to the safety of any other person or the community, and (3) the reduction is appropriate considering the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Hardin*, No. 1:19 CR 240, 2020 U.S. Dist. LEXIS 90855, at *5 (N.D. Ohio Apr. 7, 2020).

### A. Extraordinary and Compelling Reasons

Extraordinary and compelling reasons for sentence modification exist under four categories set forth at U.S.S.G. § 1B1.13 Application Note 1. Here, the only relevant category is the fourth category, labeled "other reasons." *Hardin*, 2020 U.S. Dist. LEXIS 90855, at *3.

To determine whether other reasons warrant sentence modification, the Court considers whether: (1) the defendant is at high risk of having grave complications should he contract COVID-19, and (2) the prison where the defendant resides has a severe COVID-19 outbreak.

Alexander, who is 57 years old and has served more than 75% of his sentence, suffers from asthma.  Previously, the Court denied Alexander's motion for compassionate release because it found his medical records alone did not rise to the level of moderate to severe asthma.  See Doc #: 65 at 4.  Those records indicated he was "doing well generally" and he only used his albuterol inhaler several times a month.  Id.

Now, however, with assistance from counsel, Alexander has provided supplemental medical records showing that his asthma is more severe than initially thought.  Doc #: 67-2.  Alexander now uses albuterol several times a *day* and has been prescribed an additional inhaler containing Mometasome Furoate.  Mometasome is an immune-weakening medication that places Alexander at greater risk of serious illness from the virus, and he has been advised to "[s]tay away from people with infections, colds, or flu."  Doc #: 67-1.  Alexander stopped using the Mometasome presumably because he did not like its affect on him, but his symptoms have reached the point where he can no longer avoid taking it.

Alexander also suffers prediabetes and has been experiencing elevated blood pressure.  The BOP has referred him to a cardiologist for possible left ventricular hypertrophy (LVH), aka enlarged heart.  Alexander concedes these conditions are not specifically listed on the CDC's website as risk factors.  However, the CDC's list is not intended to be an exclusive list of risk factors and, given his asthma and immune-weakened system due to Mometasome, the Court finds Alexander's system is severely compromised.

The Government contends there is no reason to release Alexander at this time because his asthma is controlled.  Furthermore, the BOP is not currently reporting any positive COVID-19 cases at FCI Allenwood Low.  The Court is impressed with the BOP's efforts to stem the pandemic at this facility and to control Alexander's symptoms.  However, it is undisputed that FCI Allenwood Low houses 1003 inmates and has only tested 125 of them. The lack of positive results does not necessarily mean the virus is not present in the prison. *See, e.g., United States v. Gardner*, 4:14 CR 20745-TGB (E.D. Mich. Jul. 22, 2020) (the prison's report of zero confirmed cases is more likely a result of lack of testing than lack of the virus' presence in prison); *Segars v United States*, 2020 WL 3172734 at *3-4 (E.D. Mich. Jun. 15, 2020) (same).  Also, Allenwood's prison complex has 78 positive inmates and 9 positive staff members.  USP Allenwood has 4 positive inmates and 1 positive staff member.  The staff members and contractors intermingle and live in the same community.

As we are heading into flu and colds season – not to mention the current surge in COVID-19 cases – it will become harder for Alexander to socially distance from infected inmates and staff members working at his facility.  The Court finds Alexander's elevated risk of serious illness and his increased exposure to the virus while incarcerated constitute extraordinary and compelling reasons warranting a reduction in sentence.  But the analysis does not end here.

### B.     Danger to the Safety of any Other Person or the Community

For a court to grant compassionate release, it must also find the defendant is not a danger to the safety of any other person or the community.  18 U.S.C. § 3142(g).  Section 3142(g) calls for courts to consider (1) the nature of the circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4)

the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Id.

The Government contends that Alexander remains a danger to the public based on the controlled substance offenses he committed, the weight of the controlled substances for which he was convicted, and his prior history of drug offenses in 1990 and 1996 – all of which show a pattern of disregard for the law and indicate he still presents a danger to the community. Doc #: 73 at 11-12. In short, Alexander poses a danger to the community because of the convictions for which he is currently incarcerated and drug offenses for which he was convicted 24 and 30 years ago.

The evidence shows that Alexander has spent the last 17 years of incarceration taking advantage of numerous programs offered at FCI Allenwood Low to acquire marketable skills, rehabilitate himself, and prepare for a productive life and career following his release from prison. Specifically, Alexander has become an Alternatives to Violence Project Facilitator, a Suicide Companion,[1] a Credentialed Alcohol and Substance Abuse Counselor, and he has earned a two-year Associates Degree in Liberal Arts with a 3.9 GPA through a Second Chance Pell Grant.

---

[1] See www.bop.gov/Program Statement 5324.08 Suicide Prevention Program § 13:

> Because of the very sensitive nature of such assignments, the selection of inmate observers requires considerable care. . . . Observers will be selected based upon their ability to perform the specific task but also for their reputation within the institution. In the Program Coordinator's judgement, they must be mature, reliable individuals who have credibility with both staff and inmates. They must be able, in the Program Coordinator's judgement, to protect the suicidal inmate's privacy from other inmates, while being accepted in the role by staff. Finally, in the Program Coordinator's judgment, they must be able to perform their duties with minimal need for direct supervision.

the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Id.

The Government contends that Alexander remains a danger to the public based on the controlled substance offenses he committed, the weight of the controlled substances for which he was convicted, and his prior history of drug offenses in 1990 and 1996 – all of which show a pattern of disregard for the law and indicate he still presents a danger to the community. Doc #: 73 at 11-12. In short, Alexander poses a danger to the community because of the convictions for which he is currently incarcerated and drug offenses for which he was convicted 24 and 30 years ago.

The evidence shows that Alexander has spent the last 17 years of incarceration taking advantage of numerous programs offered at FCI Allenwood Low to acquire marketable skills, rehabilitate himself, and prepare for a productive life and career following his release from prison. Specifically, Alexander has become an Alternatives to Violence Project Facilitator, a Suicide Companion,[1] a Credentialed Alcohol and Substance Abuse Counselor, and he has earned a two-year Associates Degree in Liberal Arts with a 3.9 GPA through a Second Chance Pell Grant.

---

[1] See www.bop.gov/Program Statement 5324.08 Suicide Prevention Program § 13:

> Because of the very sensitive nature of such assignments, the selection of inmate observers requires considerable care. . . . Observers will be selected based upon their ability to perform the specific task but also for their reputation within the institution. In the Program Coordinator's judgement, they must be mature, reliable individuals who have credibility with both staff and inmates. They must be able, in the Program Coordinator's judgement, to protect the suicidal inmate's privacy from other inmates, while being accepted in the role by staff. Finally, in the Program Coordinator's judgment, they must be able to perform their duties with minimal need for direct supervision.

Doc #: 62 at 5. He is also a member of the Can-Do Foundation, and is among the Foundation's Top 25 Men Deserving Clemency. *Id*. If released, Alexander plans to live with his 77 year old mother, seek employment utilizing his Alcohol and Substance Abuse Counsel credentials, and create a non-profit organization using his Alternatives to Violence Project credentials to counsel at-risk youth. *Id*. at 6. Also, Alexander is 57 years old and he has a 15 year old son who was born shortly after his arrest in 2004. The record shows that Alexander enrolled in parenting education classes at FCI Elkton in order to learn how to bond with his son, and participate in his son's life, while incarcerated. Doc #: 72-2. This is not the picture of a man who still poses a danger to the community, but a man who has turned himself around, spent his prison time wisely, and is ready to begin a new life upon release.

The Court does not downplay the danger to society of drug-trafficking. Its victims are countless. But at this point in his incarceration, particularly given the sentencing disparity below, keeping Alexander in prison would be gratuitously punitive. Given his age, his accomplishments, and the amount of time he has already served, the Court finds Alexander is no longer a danger to society.

### C. 18 U.S.C. § 3553(a) Sentencing Factors[2]

Among the sentencing factors a court must consider when determining whether to grant compassionate release is the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment for it, to promote respect for the law, and to avoid

---

[2] Due to the overlap between the factors the Court must address in analyzing a defendant's danger to society and many of the 3553(a) sentencing factors, the Court need not address them in this section. See 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(B)-(D).

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(2)(A), 3553(a)(6).

In 2004, Alexander was classified as a career offender based on a prior conviction for attempted possession of cocaine with the intent to distribute. His guidelines range was 262 to 327 months, and the Court sentenced him to the low end of the range, 262 months. The Sixth Circuit recently held that attempted drug offenses no longer qualify as a career-offender predicate. *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (holding the guidelines' definition of a "controlled substance offense" under 4B1.2(b) does not include attempt crimes). If sentenced today, absent the career-offender predicate, Alexander's guidelines range would be 92 to 115 months. Because of his prior drug felony offense, however, he would be subject to a mandatory minimum sentence of 120 months. Alexander passed that number 6 years ago. While the change in law is not retroactive, the undersigned finds that a sentencing disparity, along with additional factors, may justify compassionate release in certain cases. *United States v. Howell*, No. 4:14-CR-298, 2020 Dist. LEXIS 189101 at *6 (N.D. Ohio Oct. 13, 2020) (Polster, J.). The Government has remained silent on this issue.

Because it is undisputed Alexander would be sentenced to significantly less time today – a sentencing disparity numbering in *years* – it is clear his sentence has served as adequate punishment for his crimes.[3]

---

[3] The Court notes that some district courts across the country have held that disparities between the sentence a person received and what they would receive today may constitute an extraordinary and compelling reason to reduce their sentence. *See, e.g., United States v. Arey*, No. 5:05 CR 59, 2020 Dist. LEXIS 83785 at *13-15 (W.D. Va. May 13, 2020) (collecting cases).

**III. Conclusion**

There is no current justification for keeping Alexander in prison during the pandemic with his immune-compromised system, the lack of danger he poses to the community, his accomplishments, his sentence disparity and his plans on release. Accordingly, the Court **GRANTS** Michael Alexander's Supplement to Motion to Reconsider Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). **Doc ##: 67, 72**.

The Court hereby reduces Alexander's sentence to time served, plus 14 days of quarantine prior to release from BOP custody.

**IT IS SO ORDERED.**

                                               */s/ Dan A. Polster     October 26, 2020*
                                               **Dan Aaron Polster**
                                               **United States District Judge**